| | |
|---|---|
| RONALD UNTERSHINE, Individually and on Behalf of All Others Similarly Situated, | )  Case No.: 18-cv-501 )  ) **CLASS ACTION COMPLAINT** |
| Plaintiff, | )  ) |
| vs. | )  ) |
| | )  **Jury Trial Demanded** |
| PROFESSIONAL PLACEMENT SERVICES LLC and CAPITAL ONE N.A., | )  )  ) |
| Defendants. | )  )  ) |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Ronald Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant Professional Placement Services LLC ("PPS") is a domestic limited liability company with its principal place of business located at 272 North 12th Street, Milwaukee, Wisconsin 53233. Its registered agent in Wisconsin is Craig Johnson, 272 North 12th Street, Milwaukee, Wisconsin 53233.

7. PPS does substantial business in Wisconsin.

8. PPS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. PPS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. PPS is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

11. PPS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

12. Upon information and belief, Defendant Capital One N.A. ("Capital One") issues and administers Kohl's brand credit card accounts. Capital One is a national bank with its principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

13. Capital One does substantial business in Wisconsin.

14. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

2

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

15.　　Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

16.　　Capital One is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

17.　　Capital One is a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

18.　　The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

19.　　The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/

20.　　Capital One uses third-party debt collection agencies, including PPS, to collect consumer debts.  Capital One, directly or indirectly, is a "debt collector" under this arrangement. Wis. Stat. § 427.103(3).

3

21.     Any company meeting the definition of a "debt collector" (here, Capital One) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

22.     On or about January 16, 2018, Capital One mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to Capital One and associated with Plaintiff's "Kohl's" store-brand credit card account with an account number ending in 8046. A copy of this account statement is attached to this complaint as Exhibit A.

23.     Plaintiff used the Kohl's-brand Capital One credit card account only for personal, family, or household purposes.

24.     Exhibit A states:

### ACCOUNT SUMMARY

| | | |
|---|---|---|
| Previous Balance | $ | 3,479.26 |
| Payments and Other Credits | - | 0.00 |
| Purchases | + | 0.00 |
| Fees | + | 37.00 |
| Interest Charges | + | 66.51 |
| New Balance | $ | 3,582.77 |

Opening/Closing Date 12/16/2017 - 01/16/2018
Days in Billing Cycle                32
Total Credit Line            $3,000
Available Credit             None

**Questions?**
Click on My Kohl's Charge at Kohls.com or
Call Customer Service 1-800-564-5740
Sunday 8:00 AM to 9:00 PM (Central)
Monday-Saturday 7:00 AM to 9:00 PM (Central)
Automated service is available 24 hours.

### PAYMENT INFORMATION

| | | |
|---|---|---|
| New Balance | $ | 3,582.77 |
| Payment Due Date | | 02/11/2018 |
| Minimum Payment Due | | 971.00 |
| Amount Past Due | | 833.00 |
| To Avoid Interest Charge Pay | $ | 3,582.77 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $37.00

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 14 years | $7,699.00 |
| $138.00 | 3 years | $4,986.00 (Savings = $2,713.00) |

If you would like information about credit counseling services, call 1-877-499-9467.

Exhibit A.

4

25.     Exhibit A states that, as of January 16, 2018, Plaintiff's account ending in 8046 had a "New Balance" of $3,582.77, with an "Amount Past Due" of $833.00, a "Payment Due Date" of February 11, 2018, and a "Minimum Payment Due" of $971.00.

26.     On or about, February 2, 2018 PPS mailed Plaintiff a debt collection letter regarding the same alleged debt, allegedly owed to Capital One and associated with Plaintiff's Kohl's-brand Capital One credit card account.  A copy of this letter is attached to this complaint as Exhibit B.

27.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

28.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by PPS to attempt to collect alleged debts.

29.     The alleged debt referenced in Exhibit B is the same Plaintiff's Kohl's-brand Capital One credit card account referenced in Exhibit A.

30.     Upon information and belief, Exhibit B is the first written communication PPS mailed to Plaintiff regarding the alleged debt referenced in Exhibit B.

31.     Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.  Unless you notify this office within 30 days after receiving this notice that you dispute the validity of  this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor."

Exhibit B.

5

32.     Exhibit B also contains the following:

Creditor:                Capital One, N.A.                                    1245-ONPPSV10-801-12/28/17
Original Creditor:       Capital One  N.A.                                    MEMBER
Re:                      Your Kohl's Credit Card Account XXXXXX8046
PPS Account #:           ███0728
Balance:                 $3582.77
                                        COLLECTION NOTICE                     AMERICAN COLLECTORS
                                                                              association member
This letter will serve to inform you that your delinquent account has been placed with Professional Placement
Services, LLC (PPS).  PPS will help you resolve this debt!!

The records provided to us show that your account is delinquent.

Exhibit B.

33.     Immediately below this information, Exhibit B contains the following:

Please call **888-828-5368** or **414-224-3581** to arrange payment or if any of the above information is incorrect.

Exhibit B.

34.     The instruction in Exhibit B that the consumer should "Please call 888-828-5368
or 414-224-3581 . . . if any of the above information is incorrect," is false, deceptive, misleading,
and confusing to the unsophisticated consumer because it contradicts, overshadows, and
confuses the debt validation notice and encourages the consumer to forego her verification rights
by communicating disputes orally rather than in writing:

15 U.S.C. § 1692g(a)(4) states:

    (a) Notice of debt; contents

    Within five days after the initial communication with a consumer in
    connection with the collection of any debt, a debt collector shall, unless
    the following information is contained in the initial communication or the
    consumer has paid the debt, send the consumer a written notice
    containing—

    …

            (4) a statement that if the consumer notifies the debt collector in
            writing within the thirty-day period that the debt, or any portion
            thereof, is disputed, the debt collector will obtain verification of
            the debt or a copy of a judgment against the consumer and a copy
            of such verification or judgment will be mailed to the consumer by
            the debt collector;

6

35. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

36. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

37. Some reasons "any of the above information is incorrect" would be that PPS is attempting to collect the debt from the wrong person, the account has already been paid, or PPS is attempting portions of the balance that are not yet due.

38. These are classic FDCPA disputes, and were the primary reasons Congress adopted the debt validation procedure specified in 15 U.S.C. § 1692g and the debt validation notice PPS provided in <u>Exhibit B</u>. *E.g. Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 ("Congress enacted the FDPCA to 'eliminate the recurring problem of debt collectors

7

dunning the wrong person or attempting to collect debts which the consumer has already paid.") (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988); *Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

39.    Exhibit B confusingly directs the debtor to notify PPS about these disputes without informing the consumer that the dispute must be communicated in writing in order to trigger verification. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W.

Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

40. PPS' instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

41. The overshadowing effect is compounded because Exhibit B does, in fact, attempt to collect portions of the balance that are not yet due. *See, e.g., Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

42. Exhibit B states:

| | |
|---|---|
| Creditor: | Capital One, N.A. |
| Original Creditor: | Capital One  N.A. |
| Re: | Your Kohl's Credit Card Account XXXXXX8046 |
| PPS Account #: | ████0728 |
| Balance: | $3582.77 |

Exhibit B.

43. Exhibit B states that, as of February 2, 2018, Plaintiff's account, had a "Balance" of $3,582.77 and does not state that Plaintiff could return her account to a current status by making a minimum payment.

44. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

45. PPS' representation in Exhibit B that Plaintiff's account had a "Balance" of $3,582.77 is false, deceptive, misleading, and unconscionable.

9

46.     Upon information and belief, as of February 2, 2018, when PPS mailed <u>Exhibit B</u>, the balance of Plaintiff's account had not been accelerated.

47.     The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of <u>Exhibits A and B</u>. <u>Exhibit A</u> states that Plaintiff could return the account to a current status by making a minimum payment of $971.00 on or before February 11, 2018. However, <u>Exhibit B</u>, mailed to Plaintiff more than a week before that payment due date, states that the "Balance" is $3,582.77 without stating an amount "due." *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (debt collector misleads the consumer if it states the "balance" when only a portion of that balance is actually due); *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("Only the past due amount, the amount owed [the debt collector] can be the 'amount of the debt' under § 809(a)(1).").

48.     PPS and Capital One both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and misrepresented the amount of the debt.

49.     Upon information and belief, PPS and Capital One work in a scripted process to collect Capital One debts such as Plaintiff's.

50.     Upon information and belief, PPS is fully aware of the contents and representations in <u>Exhibit A</u>.

51.     Upon information and belief, PPS is fully aware that Capital One sends account statements like <u>Exhibit A</u> to consumers around the same time PPS letters in the form of <u>Exhibit B</u>.

52.     Upon information and belief, PPS is fully aware that its letter is sent during account billing cycles wherein Capital One has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

53.     Plaintiff was confused by Exhibits A and B.

54.     The unsophisticated consumer would be confused by Exhibits A and B.

55.     Plaintiff had to spend time and money investigating Exhibits A and B.

56.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A and B.

### The FDCPA

57.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

58.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.

11

1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

59. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

60. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd,* 868 F.2d 566 (3d Cir. 1989).

61. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

13

a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63.     15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64.     15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

65.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

66.     15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

14

67. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

68. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> . . .
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

69. 15 U.S.C. § 1692g(b) requires that these disclosures must be made in a non-confusing manner and prohibits debt collectors from communicating with the debtor in ways that overshadow or are inconsistent with the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

70. The failure to make these disclosures in a non-confusing manner *per se* violates the FDCPA. No additional materiality inquiry is necessary. *Janetos*, 825 F.3d at 324.

15

*The WCA*

71.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

72.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

73.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

74.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

75.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

76.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

16

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

77.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

78.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

79.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

80.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

81.    The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

82.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

17

83.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

84.     The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

85.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86.     Count I is brought against Defendant PPS.

87.     Exhibit B directs the consumer to contact PPS by telephone "if any of the above information is incorrect."

88.     Exhibit B is misleading to the unsophisticated consumer because a consumer who wishes to trigger her verification rights must communicate her dispute in writing, whereas Exhibit B instructs the consumer to communicate her dispute by telephone.

18

89.     PPS violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4)(, 1692g(a)(5), and 1692g(b).

## COUNT II – FDCPA

90.     Count II is brought against Defendant PPS.

91.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92.     Prior to sending Exhibit B, PPS was aware that Capital One had sent Plaintiff Exhibit A, which stated that the balance of Plaintiff's account had not yet been accelerated.

93.     PPS represented to Plaintiff that Plaintiff's Capital One account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

94.     PPS misrepresented the amount, character, and legal status of the debt it was collecting.

95.     PPS represented to Plaintiff that he could not prevent acceleration of the balance by making a minimum payment.

96.     PPS' attempts to collect the entire balance of class members' Capital One accounts were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

97.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(6)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT III -- WCA

98.     Count III is brought against both Defendants.

99.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

19

100.     In Exhibit A, Capital One represented to Plaintiff that the balance of her account had not yet been accelerated.

101.     Nonetheless, Capital One contracted with PPS to send Exhibit B, which stated the whole of Plaintiff's account was past due and attempted to collect the entire balance as though it had been properly accelerated.

102.     In fact, when PPS sent Exhibit B, PPS knew that Capital One had just sent Plaintiff an account statement representing that her Capital One debt had not been accelerated.

103.     Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

104.     Plaintiff brings this action on behalf of two Classes.

105.     Class I ("Nationwide Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement by Capital One in the form of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in the form of Exhibit B was mailed before the payment due date stated in the account statement in the form of Exhibit A, (e) where the alleged debt was allegedly incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between March 29, 2017 and March 29, 2018, inclusive, (f) and the account statement and debt collection letter were not returned by the postal service.

106.     Class II ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement by Capital One in the form of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in the form of Exhibit B was mailed before the payment due date stated in the account statement in the form of

Exhibit A, (e) where the alleged debt was allegedly incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between March 29, 2017 and March 29, 2018, inclusive, (f) and the account statement and debt collection letter were not returned by the postal service.

107.    Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

108.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A and B violate the FDCPA and/or the WCA.

109.    Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

110.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

111.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

112.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  March 29, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

22